or arguments not to exceed 15 minutes per side, Ms. Amy Lee Copeland for the appellant. Good morning and may it please the court. My name is Amy Lee Copeland. I represent the appellant Tommy Lee Jones and I reserve five minutes for rebuttal. I graduated from law school and I'm a cantankerous district judge in the entire world. This appeal pains me because I have a soft spot for cantankerous district judges. But this appeal comes on the heel of Daniels in 2015 when the court reversed this district judge's conduct of a trial. Smith in 2017 where it didn't reverse but it found comments very troubling, especially about threatening the defendant with contempt if he testified. And now I'm standing before you today raising among other things a bias claim on this case. In this case the most important witness presented by the government was FBI agent Nichols. Nichols was called twice, he was so important. This case demonstrates that the government was allowed to question repeatedly agent Nichols without redirection or without any interruption. In the first go around the government made it through 72 pages in about an hour and a half of questioning without any interruption by the district judge. But 13 pages into cross-examination about peer-to-peer software and the genesis of some time and date stamps on exhibits shown by the government, the district court interrupts. Interruption requires the defendant to proffer why he is asking these questions, why these questions are relevant. The judge says he doesn't know how any of these questions are relevant. Besides, this witness has been very knowledgeable and very forthcoming. This was not done by any objection to the government. There is no objection that this was irrelevant. There is no objection at all. This is just an interruption by the district court 13 pages into cross-examination. My trial cohort asked for a sidebar instead of doing this in front of the presence of the jury and the district court says no. 13 pages after that interruption the district court says we'll need a break soon and the defendant a few pages later says well this is a good time for a break. In front of the jury the court says again we're wasting the jury's time on a lot of this, meaning the entire defense cross-examination of the government's most important witness. Later on even still the court says we're spending a lot of time doing something that isn't necessarily clear to me and this is again directed at defense counsel during the cross-examination. And these parts, are these with respect to the photo? There's a lot of back and forth about the admission of a photo and arguing about the photo of the unnamed man and the unnamed woman. Judge, because there's so much contention and because there's so much else in the record, I have not detailed anything about the photograph of Courtney Jennings to date in my oral argument. I am willing to let that remain in the brief. That was the basis of dismiss count number one. But so the events that you're complaining about have nothing to do with the photo? At oral argument today. But in my brief, no, I do very much complain about the photos. But the government... But conversely, what I'm asking is the events that you're complaining about, because part of the government's response as I read their brief is that yes, the judge was cantankerous because you kept bringing up or counsel kept bringing up this photo. That's why I'm trying to focus on whether the 13 pages and 13 pages you're talking about relate to that or don't relate to that. They do not relate to that. Okay, that's my answer. They do not relate to that. There is a discussion about search warrant photos that have nothing to do with this photograph of Courtney Jennings that is the subject of so much dismay and discussion. The search photos were taken. The government has unfettered access to question Agent Nichols about search warrant photographs. But my trial counterpart does not. Five questions into his own cross-examination of Agent Nichols about these same photographs, the court interrupts. Again, the court tells trial counsel, we're wasting time. You need to proffer why these photographs are helpful. The defendant proffers a reason given by the government, but it's not good enough for defense counsel. The defendant then says, well, this kind of goes to address a defense judge. And the court says, if you're going to use those, you've got to tell me how it shows these things. Were there any hitting? Were there any screaming? You're wasting time. This is done when the judge acknowledges that he hasn't even seen the photographs. But he's telling the defendant that these photographs are not going to support anything that the defendant has to argue. This actually came up as a jury instruction, not dress. These are photographs of the environs where the search took place. That's correct. Is that the idea? That is. The search occurred at 6 in the morning. How is that relevant? Well, the search occurred at 6 o'clock in the morning, and it was kind of one of those takeover entries with guns drawn and a lot of light and a lot of noise. It woke everybody up. People are running downstairs. The validity of the search, is that something that the jury needs to decide? Your Honor, the validity of the search, the motion to suppress was denied. But one of the jury instructions went to the circumstances surrounding my client's statements. And my client did make a statement immediately following the execution of the search warrant. And, like I said, there was a jury instruction that was unobjected to consider whether the weight to give the statement, you have to consider the circumstances in which it was made. Do you need photos of the room in order to show the circumstances? I mean, I'm just wondering what was driving him. It seems like, yeah, that's kind of logical to ask. Right. I think it went to a number of his defenses. Number one, he contends that this was a very small house and it was very crowded. So that when he allegedly was viewing child pornography, somebody in the house would have known about it because there were so many people in the house. His mother was recovering from a brain injury. Number two, it went to his, how the search was conducted. Like I said, it was kind of one of those overpowering search. I believe there's testimony that they thought Mr. Jones' wife had a concealed carry permit. And so it was. Could the judge ask these questions that I'm asking? I mean, could the judge interrupt and ask, how is this relevant? Because it, on its face, doesn't seem relevant. Your Honor, the way they were. At the nature of. I understand. But the way they were asked, Judge, saying things like you're wasting time. I understand. This is nothing the jury has to decide. This would have been better as a sidebar, which my trial counsel repeatedly asked for. Can we approach, Judge? Can we have a sidebar about this? And I guess the judge wanted to run this as a freight train because he's trafficking all of this information before the jury. And it just keeps going. There was a whole exchange the second time Agent Nichols testified about asking him about a report that he testified about on direct examination. He couldn't identify the date that the computer, while sitting on the stand, he couldn't identify on the stand the date that the computer was first used. I believe the peer-to-peer software was installed in 2015. The computer was first purchased in 2012 or 2013. He told the judge he needed five minutes to do it. Agent Nichols did. And the judge said two minutes would have been fine. Five minutes, no way. During Mr. Jones' testimony, Mr. Jones himself, you're overreaching like mad, he tells Mr. Jones in front of the jury. It is this constant telling of the jury, this is what I think. This is irrelevant. You're not proving your case. This is overreaching. You're not. It goes on and on and on. The next question I'm sure that you're going to ask is, was there any instruction given about how the jury should consider the judge's comments? Of course. He gave the jury an instruction. You are not to consider anything I've said as evidence in this case. These are simply my comments. But at some point, the balanced tips, the type of things he's saying, the frequencies with which he is saying it, very much shows his bias in this situation. This is the guy that is telling the jury when they have to be there, when they can leave, when they can go to the bathroom, when they can eat lunch. You may have also noticed that this was a six-day trial. There were only 10 1⁄2 hours of evidence adduced at the trial. If it hadn't been held from about 9 to 11 over the six days, this probably would have been a 2 1⁄2 to three-day trial. Despite the fact that it lasted six workdays, it was a fairly compressed showing of evidence, which also favors the fact that my client did not receive a fair trial based on these comments. I want to touch briefly on the restitution issue. This sort of bleeds again into the judicial bias. Defense counsel at trial faced comments like, in response to a Rule 414 motion or an alibi motion, I'm going to grant the government's motion and I'm probably going to grant all the other motions, too. At sentencing, the PSI objections were delivered and the judge says, you know, I've read what the government says. We're just moving on here. This was not in front of a jury, obviously. But it leads me to conclude that the restitution issue was not even considered by the judge. Which restitution issue? The restitution issue is this. The Vickie attorney for the Vickie series. The $100,000 instead of the $10,000? The $10,000 versus $2,000. $10,000 versus $2,000. Yes, Your Honor. There were three videos that were shown. And Vickie's attorney, as she does in every case, submits a request for $10,000, has no knowledge whatsoever of the facts underlying the case. Trial counsel says this really should be $2,000 based on a Judge Weinstein order. The judge says, kind of forgets about restitution. People keep reminding him, so I really have to decide $10,000 or $2,000. Yes, the government says you can take this under advisement. That's really the right question, though, isn't it? Well, I think the right question. Given the two lawyers in front of you. I think it really is. Is it $10,000 or $2,000? But it also is what did the Paroline factor say? And I am out of time. May I finish your question? Sure. Thank you. It really goes to he needs to do some sort of considered weighing of this. What is appropriate, $10,000 or $2,000? There is no order saying I've considered. There's nothing. There is just an amendment. It really gives no reasons. He picks between the two that are in front of him. Correct. Although what, I mean, we've had a number of cases involving Vicki and ones like it. What could you really do other than pick or split the difference? I mean, in thinking about it as a judge, the Paroline factors don't really, I mean, nobody is presenting evidence before this judge of her psychiatry or anything, right? Vicki. Because one side is relying on whatever Vicki asked for and the other side is relying on Judge Weinstein in a completely different context. That is correct. And I believe the government will tell you that, and I speak from my own experience doing trial work, the Vicki attorney submits about an eight-inch high stack of documents saying these are all of my expenses. It's $3.2 million. But there should be some analysis because $10,000 simply seems too high. There was the case out of this court that talks about $2,000 is correct. There's Judge Weinstein's ruling. There is government proposed analysis though, right? I mean, can we or can we not assume that the district court accepted the proposed government analysis? I'm not even sure it's the government analysis. It's really Vicki's own attorney's analysis, acknowledging that she has no knowledge of the facts of the case. I know you're out of time. You didn't get to the resentencing enhancement issue. I assume even if you didn't prevail on the other issues, you'd want the case sent back for resentencing. Absolutely, Your Honor. Would you like to hear anything else about it? I can sit down now if you would. Well, no. I mean, that might be an issue for rebuttal depending upon how we get into it with the government. Thank you. Thank you. Good morning. May it please the Court, my name is Maggie Smith, and I represent the United States of America in this appeal. The district court judge in this case was certainly frustrated and perhaps exasperated. But the defendant received a fair trial. I'm going to go right to the third issue, which is what defense counsel spent most of her time on. The district court judge here, and I know this court is familiar with his record, as there have been several appeals coming out of the district court from this judge regarding judicial bias or misconduct. But here, the district court did not mistreat the defendant or defense counsel. There are a number of facts that occurred during this trial that make this case different than a case like the Daniels case. First, the district court needed to control the defense attorney's behavior. The photograph that was the subject of count one was deemed and ruled by the court to be inadmissible as extrinsic evidence. He was not allowed to show it to the jury as an exhibit. Your opposing counsel wants to focus on things that don't relate to that. Sure. I guess that's sort of a recognition that her argument isn't as strong as her other arguments. So maybe you could address the arguments she thinks are the strongest ones. I could do that. And I think it's important to note, however, that... You're not going to do that, though. No, I am going to do that. But the trial should be looked at in the totality of the circumstances. Yeah, the judges can't be exasperated about one thing and then express it when that thing isn't at issue. I mean, that's not acceptable, is it? The second factual issue here was that the defense counsel brought 12 exhibits of photos that were taken at the search warrant. When he showed up to court, he had one copy of those pictures. He had no means by which to display them on the television screens, which would have taken a simple plug-in to a computer. He didn't stop at Kinko's or any store to make copies. He had 12 pieces of paper that only the witness and he could see. The judge didn't get a copy. The jury couldn't see because he wasn't displaying them in a way that the jury could see. I thought your opposing counsel said the judge ruled the photos out of bounds without looking at them, so he didn't really know what was shown by the photos. That was the photo from Count 1. So that photo was... The photo in Count 1 we alleged to be child pornography. That's different than the 12 search warrant photos that I'm referencing now, which were the photos that Ms. Copeland was bringing up, saying that the district court was insisting on the defense offering a proffer as to why they were relevant. But he wasn't expressing exasperation about not having enough copies, or was he? No, no.  What about the things that she's complaining about as opposed to other things? It just doesn't seem that persuasive to say other things happened that he could have been exasperated about when he's expressing exasperation about the things that she's complaining about. What she is complaining about is the four times that the district court, sua sponte, interrupted the defense counsel while he was cross-examining Special Agent Nichols. That you're wasting time and what's the point of this? Correct. Are those okay or not? I think that they are okay to an extent. This court in Powers... It doesn't justify them that something else happened somewhere else in the trial that isn't related to these, or does it? Can you just get exasperated generally at counsel? Is that okay? I don't think he's exasperated... It depends on the totality of what's happening in the courtroom. Like I said, four times the district court judge, sua sponte, interrupted the defense attorney during that cross-examination. In the Powers case, the district court judge had interrupted defense counsel 26 times, and this court found that not to be judicial bias. There is probably a spectrum of behavior that can go from being frustrated to being exasperated to being flat-out misconduct. I think the cases that have found judicial misconduct are those cases where the district court judge is questioning witnesses personally, is attacking the defense counsel personally. In the Daniels case, the district court judge had made reference to the defense attorney dancing around like a preacher and used the term flim-flam and made some derogatory comments about the defense. Now you're arguing it could have been worse. I'm saying that as the court has to make a determination as to whether or not judicial bias occurred, there seems to be in the case law a spectrum of behavior that this court will tolerate and will not tolerate. Well, you can't just count the number of interruptions. You have to see how long the trial was, how long the examination was, the nature of the subject matter, and what was the nature of the interruptions. I mean, we can't just count the number. I agree with that, Your Honor. And in looking at the transcript of this case, the interruptions by the district court judge mostly concerned efficiency of time and relevance. The district court allowed the defendant to present his case to the jury. With the exception of the witness, Keira Jones, whom I objected to the testimony outright, the district court judge did not require him to make an offer of proof of what she would testify to. And apart from her testimony, the judge never once interrupted the defense attorney when he put on his case. He called four witnesses, and he never interrupted that testimony. The district court properly required the defendant to behave himself during his testimony. There was a point where the district court judge said that the defendant was overreaching like mad in his testimony. And if you read the transcript, in the situation of the way in which that phrase was spoken, was referring to the defendant consistently offering a narrative every time he was asked a question. And even when the district court judge told him to stop giving a narrative, he continued to do so. Well, what about the judge describing one witness in front of the jury as knowledgeable and forthcoming? That was in, one of those comments was in response to my objection to the defense, sorry, to the defense question. And in the context of that commentary, his comment that he was forthcoming had to do with the fact that the witness had been answering the questions that were asked. He wasn't dodging, he wasn't trying to play cute or say, or try to take the question around some different way. He was, I think he, excuse me, sustaining my objection in couching it in terms of he's answering the questions that you're asking. This district court judge always asked the parties if they had anything for the record. Every time the defense counsel asked for a moment in order to confer with his client or another counsel at table, he was allowed to do so. And by my count, that was six times during the trial. There were three times that the district court judge offered curative instructions. The first two happened to occur at the beginning of trial when the district court talked about his comments on objections, even discussing his facial expressions and the tone of his voice should not be given any weight. And there was an instruction on interpreting rulings when the district court said, don't interpret my rulings as any indication of how I feel. And so while this was not a perfect case by any means, this defendant received a fair trial. I'd like to ask about the five-level increase. Yes, Your Honor. To do that, you've got to find, and I'm not, if we treat the activity with, there were two sets of activities, right, for the five-level increase? You have to have more than one? Right. And the first one was with one person and the second one was with his stepdaughter or his whatever you call her, his daughter, I guess. It was his stepdaughter, but not necessarily. So the two separate incidents can be with the same person. They can be, but here there were two different people, right? There were two different people involved. I want to ask about the second one. You want to ask about the stepdaughter? Okay. I do. The application note says that the phrase sexual abuse or exploitation means conduct described in, and there's a list of U.S. code sections. Which one? It has to be one of them, right? Yes. And as I was reviewing this last night, I think that Ms. Copeland was correct in terms of the incestual relationship while that exists in state law. I don't know that we have a federal counterpart to that. So you would concede that it's not proper to rely on that? I think that that's not, yes, I will. I think that I've misread the application for that.  First, the sexual abuse of the sister that occurred over a period of eight months in 1990. The lower court didn't rely on that as being more than one, though, is that correct? He didn't make specific factual findings as to that. Really, if you want to, given your commendable concession with respect to the stepdaughter, that becomes the issue then, right? Not necessarily, because we also had put forth evidence that the defendant had produced child pornography with Courtney when she was 17. That's this very photo that you've said was absolutely not. Again, he didn't rely on that, did he, the judge? I don't know that he made factual findings. He adopted the pre-sentence report. The pre-sentence report didn't refer to that either, right? The defense objected, and in my response to those objections, I included all of those bases as means by which this enhancement could apply. But if the judge didn't rely on it or even really advert to it, there is a general rule that we can rely on things presented in the record, but aren't those pretty factual? I mean, it's disputed who's in this picture. There's no specific evidence about how many times he molested the sister way back. Wouldn't those be things that on remand, assuming we were to rule that way, you could try to prove them up at resentencing? That could be, but I think the record would show by a preponderance of the evidence that the sexual offense against the 8-year-old sister, even if we just count that as one, the count one picture, the production of child pornography, there was a lot of evidence in the record about why we believed that that was the defendant and his stepdaughter. His sister with his Chiara, at least, and I don't know whether it's in the record or only in a footnote, claimed that it was she who was involved, not the stepdaughter? Yes, she claimed that it was her in the picture. The grand jury returned an indictment on that picture as being the stepdaughter. The picture and in the record, I detailed the facts surrounding that picture. It was time stamped 2011. It was taken in the defendant's basement. We could tell from the tile floor and the background. There was a baby in the background of the picture that matched the age of the defendant's grandson in 2011 when that picture was taken. The defendant himself confessed that the stepdaughter had been performing oral sex on him as early as age 16 and that he had photographed it. That is all in the record. This court could find that the 8-year-old sexual assault back in 1990, if there was only one incident, and I do think that the charging document and the conviction documents spanning the 8-month period, you could infer that there was more than one. We have to adopt, in order to uphold this now, two fact-laden conclusions that the district court didn't make. Doesn't it make more sense to have the district court make those? Well, I guess that's for the panel to determine. All right. I think it's in the record. Then let me ask this. If we were to determine that a remand was appropriate for that, how could the government object very much to saying that the court ought then to go through the Paroline factors more explicitly than it went through them? If that's what the court decides. I know we can decide whatever we want. I'm asking for the government's position on what we should do in those circumstances. I don't think that there's case law that requires the district court judge to make particular factual findings for restitution. I would note I disagree with Ms. Copeland's position that Vicki's lawyer puts forth most of the argument. I wrote a brief and submitted it, and this case was different than the Judge Weinstein case. In the Judge Weinstein case, they were possession of images. In this case, we had videos and distribution. All of that, it seems to me, I can't speak for my colleagues, would have been enough if the judge had said, yeah, that makes sense to me. That's what I'm adopting. But he didn't do that, right? He didn't expressly adopt, but I think we could infer that he adopted. We just can't infer it again. Right. Right. And I see that my time is just about up. Does the court have any other questions? Apparently not. Okay. I would ask that the district court conviction and judgment of the defendant be affirmed. Thank you. Thank you. Any rebuttal? I appreciate my colleague's candor on that issue, and now is time for a moment of candor for me, too. In reviewing the 2G2.2B5 enhancement, I was simply not curious enough. I didn't look up the gross imposition statute under Ohio law. I didn't raise this, but there's a case called U.S. v. Hammond. It's 637 Federal Appendix 897-901, 6th Circuit, 2016, that talks about if you look at the federal statutes that constitute the gross, the type of sexual abuse or exploitation that will sustain a pattern adjustment under 2G2.2B5, you have to look at a sexual act, like intentional touching, not through the clothing or the genitalia of someone under 16 years old. And that's a definition. You're going through the various federal crimes that are listed in the application note? Is that what you're talking about now? I am, Judge, and I'm sorry. She's conceded that, hasn't she? She has as far as the Courtney prong of it. I screwed up with the 1990 gross imposition conviction because that has to be tethered to a federal statute. And I don't think under 6th Circuit precedent it actually is. So I understand I cannot raise arguments for the first time in oral argument. I didn't understand the names. One is the sister and one is the daughter. One is the sister. She was talking about the daughter and you're talking about the sister. Correct. And I appreciate her candor with the stepdaughter. I don't even think the sister one counts, and I think that that would be something that should be raised on remand also. If there are any further questions, I would be happy to answer them. Otherwise, I'll cede my time back to the court. All right. Thank you. Thank you. The case is submitted. Oh, by the way, Ms. Copeland, I know you took this case under the Criminal Justice Act and you did that as a service to the court and our system of justice. So thank you very much for your able representation.